UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Hannah International Foods, Inc.

     v.                                 Case No. 18-cv-52-AJ
                                        Opinion No. 2018 DNH 162
House of Thaller, Inc.


                           **MEMORANDUM ORDER**

     In an action filed in state court, Hannah International Foods, Inc. alleges that House of Thaller, Inc. failed to satisfy the material terms of an agreement to produce certain food products.  Invoking federal diversity jurisdiction under 28 U.S.C. § 1332, the defendant removed this action here.  See doc. no. 1.  Once removed, the case was assigned to the undersigned magistrate judge, to whose jurisdiction the parties consented.  See doc. no. 8.

     The defendant now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that this court lacks personal jurisdiction over it.  See doc. no. 5.  On this same basis, but in the alternative, the defendant asks the court to transfer this matter to the United States District Court for the Eastern District of Tennessee.  See id.  The plaintiff objects.  See doc. no. 9. Concluding that the plaintiff has not demonstrated that the defendant purposefully availed itself of the privilege of conducting activities in New Hampshire, the

court grants the defendant's motion in part and transfers this matter to the Eastern District of Tennessee.

## I. APPLICABLE LAW

The plaintiff bears the burden of demonstrating that personal jurisdiction exists.  See A Corp v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).  "To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  As New Hampshire's long-arm statute "reaches to the full extent that the Constitution allows," however, the court's sole inquiry is whether exercising personal jurisdiction would comport with due process.  See Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999).  Due process requires that a defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Though a federal court may exercise general or specific personal jurisdiction over a defendant, in this case the plaintiff only asserts specific personal jurisdiction, "i.e.,

jurisdiction over [this defendant] for the purpose of this specific lawsuit." Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (citations omitted). To establish specific personal jurisdiction, a plaintiff must demonstrate that (1) its claim "directly arises out of or relates to the defendant's forum-state activities"; (2) "the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable"; and (3) "the exercise of jurisdiction is ultimately reasonable." Id. (citation omitted). "Failure to make any one of these showings dooms any effort to establish personal jurisdiction." Id. (citation omitted).

Though the court may evaluate personal jurisdiction under one of several standards, see A Corp, 812 F.3d at 58 & n. 5, the plaintiff seeks to meet its burden in this case under the prima facie standard. See doc. no. 9-1 at 4. This is the standard "most commonly employed in the early stages of litigation," see A Corp, 812 F.3d at 58 n. 5, and the defendant does not dispute its applicability here. Under the prima facie standard, the plaintiff may not "rely on unsupported allegations," but must rather "proffer evidence which, if credited, is sufficient to support findings of all facts essential to personal

jurisdiction." See Scottsdale, 887 F.3d at 20 (brackets and citations omitted). "The court, in turn, must view this evidence, together with any evidence proffered by the defendant, in the light most favorable to the plaintiff and draw all reasonable inferences therefrom in the plaintiff's favor." Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011) (citation omitted). The court "need not, however, credit bald allegations or unsupported conclusions." Id. (citation omitted).

## II. BACKGROUND

Located in Seabrook, New Hampshire, the plaintiff manufactures and supplies dips, spreads, and salads. Doc. no. 9-2 ¶ 3. The defendant is a Tennessee manufacturer of food products for wholesale and retail sellers with facilities in Knox County, Tennessee. Doc. no. 5-1 ¶¶ 3, 4. In early 2016, the plaintiff sought to provide services to a new, "substantial" customer. Doc. no. 9-2 ¶¶ 4. In order to meet this customer's demand, representatives of the plaintiff visited the defendant in Tennessee and requested that the defendant manufacture food products for the plaintiff at the defendant's plant. Id. ¶ 5.

The parties negotiated for several weeks. Id. ¶ 5. During this time, the parties exchanged "substantial communications" between Tennessee and New Hampshire. Id. In mid-April 2016,

the plaintiff signed a Contract Manufacturing Agreement in New Hampshire.  Id. ¶ 6.  The plaintiff forwarded this agreement to the defendant, which signed it in Tennessee.  Id.; doc. no. 5-1 ¶ 6.

The contract specified that the defendant would manufacture and package product for the plaintiff at the defendant's facility in Knoxville, Tennessee.  Doc. no. 9-3 at 4.  Under the contract, no product could be manufactured, packaged, or tested at any location other than that facility without the plaintiff's consent.  Id.  The contract also required that the defendant receive the plaintiff's permission before storing product outside of the Knoxville facility.  Id.  The contract provided for a term of three years, and stated that it "shall be governed by, construed and enforced in accordance with the substantive internal law of the State of Tennessee, without regard to its conflict of law principles."  Id. at 12, 15.  The contract required that the defendant produce product consistent with the plaintiff's specifications and requirements and ship that product consistent with purchase orders received from the plaintiff's customer.  Doc. no. 9-2 ¶ 7.

The plaintiff represents that its customer "operated nationwide, and that it was common knowledge that the customer had multiple stores in New Hampshire, and, as a result that the product would be shipped to multiple stores in New Hampshire."

Id. According to the plaintiff, these shipments "occurred regularly throughout the course of the relationship." Id. Though the defendant concedes that it shipped product to several different states, it does not believe that it sent shipments to New Hampshire. Doc. no. 5-1 ¶ 11.

As the parties' relationship progressed, an increasing number of issues arose related to the defendant's performance under the contract. Doc. no. 9-2 ¶¶ 8, 9. The parties regularly communicated by telephone and email, and some of these communications were directed to or from New Hampshire. Id. ¶ 8. The plaintiff also sent personnel to the defendant's plant in Tennessee to monitor product. Doc. no. 5-1 ¶ 9. The plaintiff ultimately terminated the contract in July 2017, at which point the defendant returned certain packaging to the plaintiff. Id. ¶ 12; doc. no. 9-2 ¶ 10. No employee of the defendant visited New Hampshire during the negotiation, execution, or performance of the contract or after its termination. Doc. no. 5-1 ¶ 13.

On December 20, 2017, the plaintiff filed suit against the defendant in Rockingham County Superior Court, alleging counts of breach of contract and breach of the covenant of good faith and fair dealing. See doc. no. 1-1 at 2-8. The defendant timely removed the action to this court before filing the present motion.

**III. DISCUSSION**

As discussed above, "the constitutional test for determining specific jurisdiction . . . has three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Adelson v. Hananel, 652 F.3d 75, 80-81 (1st Cir. 2011) (internal quotation marks and citations omitted). To establish jurisdiction, the plaintiff must demonstrate that each of these components is satisfied. See Scottsdale, 887 F.3d at 20. Because the plaintiff has not met its burden with respect to purposeful availment, the court limits its analysis to that inquiry. Cf. Copia Commc'ns, LLC v. AMResors, L.P., 812 F.3d 1, 4 (1st Cir. 2016).

**A.     Purposeful Availment**

"The purposeful availment prong represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." C.W. Downer, 771 F.3d at 66 (citation and internal quotation marks omitted). "The cornerstones of this inquiry are voluntariness and foreseeability." Id. (citation omitted). "This places the emphasis on the defendant's intentions and prohibits jurisdiction based on random,

7

fortuitous, or attenuated contacts." Id. (citation and internal quotation marks omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." A Corp, 812 F.3d at 60 (brackets, quotation marks, and citation omitted).

Two somewhat recent First Circuit decisions inform the court's analysis. The first, C.W. Downer & Company v. Bioriginal Food & Science Corporation, involved a contract under which a Massachusetts investment bank agreed to serve as the exclusive financial adviser for the sale of a Canadian producer of nutritional supplements. See 771 F.3d at 63. After the Canadian company solicited the investment bank in Massachusetts, the parties negotiated the contract remotely, communicating primarily by email and telephone. See id. The contract contemplated that the investment bank would provide services in Massachusetts, and the investment bank did so, ultimately identifying a potential buyer and hosting a conference call from Boston. See id. at 63-64. That deal fell through, and the investment bank subsequently learned that the Canadian company had been sold to a private equity firm. See id. at 64. When the Canadian company refused to pay the investment bank a transaction fee and other amounts under the contract, the

investment bank brought suit in Massachusetts for breach of contract and related claims.  See id.

The Canadian company moved to dismiss for lack of personal jurisdiction.  See id.  The district court granted that motion, but the First Circuit reversed, finding that the investment bank had satisfied each of the components of specific personal jurisdiction.  See id. at 65, 66-71.  As to purposeful availment, the court emphasized that the Canadian company had solicited the investment bank in Massachusetts, that the parties had formed a long-term contractual relationship which contemplated the investment bank performing services for the Canadian company in Massachusetts, and that the investment bank actually performed extensive services for the Canadian company in Massachusetts pursuant to the contract.  See id. at 66-69.  The court held that these facts, when coupled with the number and duration of the email and phone communications to and from Massachusetts, demonstrated that the Canadian company had purposefully availed itself of the privileges of conducting activities within that state.  See id. at 66-69.

Contrast this with Copia Communications, LLC v. AMResorts, L.P.  In Copia, the plaintiff was a Massachusetts company that provided internet services to hotels in Jamaica, and the defendants were a Jamaican resort operator and its Pennsylvania alter ego.  See Copia, 812 F.3d at 2.  The plaintiff sent the

defendants an offer to provide internet services for two planned Jamaican resorts. Id. After several months of negotiations, which occurred in person in Jamaica and through email communications sent from or received in Massachusetts, the parties entered into a contract, which was executed in Jamaica. Id. at 2-3. During the performance of the contract, the plaintiff shipped equipment to Jamaica and installed and maintained internet services in Jamaica. Id. at 3. No employee of the defendants traveled to Massachusetts during the negotiation, execution, or performance of the contract. See id. at 2-3. The plaintiff did, however, receive some contract-related phone and email communications in Massachusetts. Id. at 3. Nearly five years after the contract was executed, the defendants informed the plaintiff that they were not renewing its terms. Id. at 3. The plaintiff brought suit in Massachusetts, challenging the timeliness of the notice of nonrenewal. Id.

On appeal, the First Circuit "easily" affirmed the district court's dismissal of the action for want of personal jurisdiction, concluding that the defendants' contacts with Massachusetts did not "represent a purposeful availment of the protections of Massachusetts's laws." Id. at 2, 4. Finding that the email and phone communications in question were insufficient on their own to satisfy the purposeful availment

prong, see id. at 5, the court rejected the plaintiff's argument that shipments of equipment from Massachusetts and payments by the defendants to Massachusetts constituted voluntary contact between the defendants and the forum state, because there was nothing beyond the plaintiff's mere presence in Massachusetts that tied these shipments and payments to that state. See id. at 5. The court similarly held that the plaintiff's reliance on C.W. Downer was misplaced, concluding that C.W. Downer hinged on three factors not present in the record: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of in-forum services." Id. at 6 (citing Cossart v. United Excel Corp., 804 F.3d 13, 21 (1st Cir. 2015)). Thus, the court concluded that the defendants "did nothing to invoke the benefits and protections of Massachusetts's laws beyond implicitly relying on the state's laws in the way that any party to a contract relies on the laws of the jurisdiction in which his counter-party happens to reside." Id. at 5.

The facts in this case, even when viewed in the light most favorable to the plaintiff, bear more than a passing resemblance to those in Copia. As in Copia, the plaintiff here solicited the defendant in the defendant's home jurisdiction. Similarly, the contracts in both cases were negotiated either in the

defendants' home jurisdictions or remotely, with only calls and emails going to and from the plaintiffs' home jurisdictions. In both cases, the contracts contemplated performance occurring in the defendants' home jurisdictions, and in both cases that is where performance actually occurred. While representatives of the plaintiffs visited the defendants' home jurisdictions in both cases, the defendants' representatives did not visit the plaintiffs' home jurisdictions in either. Finally, though the Copia court did not focus on this fact, the contract here, like the one in that case, stated that the laws of the defendant's home jurisdiction would govern. Based on these similarities, the court is hard-pressed to conclude that Copia does not control.

Moreover, none of the factors central to the C.W. Downer decision are present here. In that case, the court emphasized that the defendant solicited the plaintiff's services in the plaintiff's home state. As noted, the opposite is true in this case. Similarly, whereas the contract in C.W. Downer contemplated that the plaintiff would perform substantial services in its home state, the contract here largely contemplated performance in Tennessee.[1] And where the plaintiff

---

[1] Though the C.W. Downer court also noted, as part of the second factor, that the parties had formed a long-term contractual relationship, see 771 F.3d at 67, the Copia decision calls the importance of that fact into question, both because

in C.W. Downer actually did perform services under the contract in its home state, performance in this case appears to have almost exclusively occurred in Knoxville. Thus, C.W. Downer is readily distinguishable and provides little basis to find purposeful availment here.

The plaintiff does point to facts, not present in either Copia or C.W. Downer, that it believes support a finding of purposeful availment in this case. According to the plaintiff, the defendant knew that the plaintiff's end-customer had stores in New Hampshire and, accordingly, that product the defendant produced would be shipped to this forum. And, according to the plaintiff, the defendant did in fact ship product to stores in New Hampshire pursuant to its agreement with the plaintiff. This, in the plaintiff's view, constitutes sufficient contact with New Hampshire for this court to exercise jurisdiction over the defendant. For its part, the defendant disputes that it ever shipped product to New Hampshire. Even assuming such shipments occurred, however, the court is not persuaded that they constitute purposeful availment.

---

the contract Copia endured for longer than the contract in C.W. Downer and because the Copia court did not list the duration of the contract as one of the factors upon which the C.W. Downer decision hinged. See Copia, 812 F.3d at 3, 6. In light of this, and because the anticipated duration of contract here was shorter than the actual durations in either C.W. Downer or Copia, the court does not give this fact much weight.

As discussed, the purposeful availment component emphasizes "the defendant's intentions and prohibits jurisdiction based on random, fortuitous, or attenuated contacts." C.W. Downer, 771 F.3d at 66 (citation and internal quotation marks omitted). Based on the plaintiff's own representations, the sole reason the defendant may have sent shipments to New Hampshire in this case is because the plaintiff's end-customer "operated nationwide, and it was common knowledge that the customer had multiple stores in New Hampshire." Doc. no. 9-2 at 2. In other words, there is nothing about these shipments that demonstrates that the defendant intended to target New Hampshire any more than it did any other state to which it shipped product. And the Supreme Court has rejected the notion that the act of passively placing an item in the stream of commerce with the expectation it will reach a particular state subjects a defendant to that state's jurisdiction. See, e.g., J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 882 (2011) (plurality opinion) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); id. at 891 (Breyer, J., concurring in the judgment) ("[T]his Court has rejected the notion that a defendant's amenability to suit travels with the chattel."

(citation, brackets, and internal quotation marks omitted)).  In short, there is nothing about the shipments at issue here that moves them beyond the realm of random, fortuitous contacts with New Hampshire.  They therefore provide insufficient basis to exercise jurisdiction over the defendant.[2]

In sum, the court finds that the plaintiff has not met its burden of demonstrating that the defendant purposefully availed itself of the privilege of conducting activities in New Hampshire.  This court accordingly does not have personal jurisdiction over the defendant.

**B.  Transfer**

Though the defendant primarily requests that the court dismiss this action, it alternatively asks that the court transfer the case to the United States District Court for the Easter District of Tennessee.  Per 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it his

---

[2] The plaintiff also cites several district court decisions that it believes support its position.  See GT Solar Incorporated v. Fabrizio GOI, 2009 DNH 156 (Laplante, J.); Trade Wings, LLC v. Technetics, Inc., 2002 DNH 182 (Barbadoro, J.); Macri v. Macri, 2002 DNH 089 (DiClerico, J.).  These decisions significantly predate C.W. Downer and Copia, however, and therefore do not benefit from recent refinements to the purposeful availment analysis.  As the court finds the more recent appellate decisions dispositive, it need not, and does not, reach whether these older decisions suggest a contrary result.

15

in the interest of justice, transfer such action . . . to any other court in which the action . . . could have been brought at the time it was filed . . . ."  The First Circuit has held that this statute applies when a district court concludes it lacks personal jurisdiction over a defendant and that it "establish[es] a rebuttable presumption in favor of transfer" that is only overcome "if an inquiring court determines that a transfer is not in the interest of justice."  Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 111-20, 119 (1st Cir.), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017) (citations and internal quotation marks omitted).

The court has little trouble concluding that it serves the interests of justice to transfer this case to the Eastern District of Tennessee.  This matter has been pending, either in state court or here, for the better part of nine months.  This court established a schedule for this case and the parties imply that they have conducted at least some discovery.  Dismissing this case now, only to have the parties start from scratch in Tennessee, makes little sense.  The court therefore grants the defendant's alternative request for relief.

## IV. CONCLUSION

The court concludes that it does not have personal jurisdiction over the defendant, as the defendant never purposefully availed itself of the privileges of conducting activities in New Hampshire. Rather than dismiss this case, however, the court concludes that it is in the interests of justice to transfer this matter to a forum with such jurisdiction. The court therefore directs the Clerk's Office to transfer this case to the United States District Court for the Eastern District of Tennessee. The defendant's motion to dismiss (doc. no. 5) is granted in part, consistent with this outcome.

SO ORDERED.

*Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge

August 8, 2018

cc: Arnold Rosenblatt, Esq.
    Charles G. Taylor, III, Esq.
    Mark L. Mallory, Esq.